UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMINE B. FUDGE,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.: 17-cv-01423-W (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 14, 15)** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On July 13, 2017, plaintiff Carmine B. Fudge filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On February 18, 2014, plaintiff filed an application for SSI, alleging onset of disability on November 1, 2011. (Certified Administrative Record ["AR"] 141-49.) Plaintiff stated that he was unable to work due to the following: loss of vision to left eye, bipolar, psychosis, brain damage from fight, memory problems, hallucinations, and hearing voices. (AR 50.) The application was denied initially and upon reconsideration. (AR 50-62, 63-76.)

On August 29, 2014, plaintiff requested a hearing. (AR 93-95.) A hearing was held before an administrative law judge ("ALJ") on February 8, 2016. (AR 32-49.) Plaintiff testified at the hearing, along with a Vocational Expert ("VE"), Gloria Lasoff. (AR 32-49.) Plaintiff was represented at the administrative hearing. (AR 32-49.) The ALJ issued a decision on May 31, 2016, finding that plaintiff was not disabled. (AR 14-31.) Thereafter, plaintiff requested a review of the decision by the Appeals Council. (AR 139.) The ALJ's decision became the final decision of the Commissioner on May 15, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 18, 2014.[1] (AR 20.)

---

[1] SSI is not payable prior to the month following the month in which the application is filed. *See* 20 C.F.R. § 416.335.

2

At step two, the ALJ found that plaintiff had the following severe impairments: chronic alcohol abuse, marijuana abuse, a psychotic disorder, a bipolar disorder, and an anxiety disorder. (AR 20.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 21-22.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he could perform simple, repetitive tasks in a non-public work environment. (AR 22.) Additionally, the ALJ determined that plaintiff should have no exposure to workplace hazards, such as unprotected heights, dangerous or fast-moving machinery, etc. (AR 22-25.)

At step four, the ALJ determined that plaintiff had no past relevant work. (AR 25.) The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, hand packager, kitchen helper, or cleaner), the ALJ found that plaintiff was not disabled from February 18, 2014 through May 31, 2016. (AR 27-28.)

**PLAINTIFF'S CLAIM OF ERROR**

Plaintiff claims that the ALJ erred when he failed to discuss in his decision the 2015-2016 progress notes of one of plaintiff's treating physicians, John Donnelly, M.D., and plaintiff's hospitalization records from 2015. (*See* ECF No. 14-1 at 9-10.) The parties do not dispute that the ALJ failed to discuss the 2015-2016 progress notes of Dr. Donnelly or plaintiff's 2015 hospitalization records. (*See* ECF No. 14-1 at 9-10; AR 15-1 at 10-13; AR 21-25.) Rather, the parties dispute whether this evidence was significant and probative, thus requiring the ALJ to discuss it. (*See id*.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Id*. (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." *Id*.; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (affirming where ALJ had failed to mention testimony from lay witness which was not significant and probative).

In his decision, the ALJ only discussed the following medical records: a hospital visit to Tri-City Medical Center in February 2011, a visit to Exodus Recovery Center in May 2011, an evaluation at Tri-City Medical Center in June 2011, and a consultative psychiatric evaluation in March 2014. (*See* AR 21-25.) He did not discuss any other medical records. Thus, the ALJ did not discuss plaintiff's hospitalization records from his

May 2015 admission to Tri-City Medical Center for "suicidal ideation and auditory hallucinations with a plan to shoot himself"; his June 2015 admission to Tri-City Medical Center with complaints "of auditory hallucinations of a demon telling him to kill himself"; or his August 2015 admission to Tri-City Medical Center due to "increased auditory hallucinations and suicidal ideation and not feeling safe in the community." (*See* AR 446-81.) Nor did the ALJ discuss the progress notes of Dr. Donnelly at MHS North Coastal Clinic for visits on November 9, 2015, December 23, 2015, and February 3, 2016. Dr. Donnelly described significant difficulties in memory function, verbalization, the need to rule out dementia, and significant delays in function. (*See* AR 482-89.)

The Commissioner contends that these medical records from 2015 and 2016 were not probative because they were generally duplicative of the evidence the ALJ explicitly discussed. According to the Commissioner, plaintiff's 2011 records established a "pattern of behavior," in that "[p]laintiff would seek treatment while off his medication, and then his symptoms would improve with treatment." The Commissioner asserts that "the more recent treatment notes indicate a continuing pattern of non-compliance with prescribed treatment." (ECF No. 15-1 at 10-11.)

Dr. Donnelly's progress notes reflect that plaintiff has "schizoaffective disorder—bipolar type." (AR 483, 485, 487.) During his November 2015 visit to Dr. Donnelly, plaintiff reported the following: having irritability and anxiety and feeling "like [he's] gonna come out of [his] skin; having "racing thoughts"; having "trouble focusing and easily get[ting a] sense of feeling bombarded by input"; feeling "like they're having a cheerleading competition, theres like too much action"; hearing "voices talking down on me" which are "kind of" "present daily" and tell him he's "schizophrenic and [he] should kill [him]self because [he's] sick"; he does not feel compelled to do what the voices say; he has a "thing that follows [him] sometimes" that is "pitch black, like a grasshopper" and when he gets "stressed out" he sees it and "thinks it is a demon"; and "thinks the FBI is after him." (AR 486.) At this time, plaintiff claimed "routine compliance" with his medications, which included Sustenna and Depakote. (AR 487.)

In December 2015, plaintiff further reported an "ongoing sense of people talking about him and 'plotting on me'" and "wonders as well if the FBI is plotting on him." (AR 484.) At this time, he reported taking his pills "most of the time." (AR 484.) He was still taking Depakote, although he was two weeks late on taking his Sustenna. (AR 485.) In February 2016, plaintiff reported that that he "worries that friends are trying to take things from him," but "denies any recent sense of strangers talking about him." (AR 482.) He also claimed that he was taking his pills daily. (AR 482.) Based on the foregoing, the Court disagrees with the Commissioner's characterization of Dr. Donnelly's progress notes as merely evidencing a continuing pattern of non-compliance with prescribed treatment.

Furthermore, plaintiff's hospitalization records in 2015 are probative of whether plaintiff's severe disorders could be controlled with medication. The Court notes that plaintiff's hospitalizations did not follow significant periods of time without medications, thus indicating that even a day without medication would set plaintiff back significantly. (*See* AR 467-76 (In May 2015, plaintiff was admitted for suicidal ideation and auditory hallucinations with a plan to shoot himself with no clear indication that he had been off his medications for any period of time); AR 455-66 (In June 2015, plaintiff stopped taking his psychiatric medications five days before going to the emergency room complaining of auditory hallucinations of a demon telling him to kill himself and stating that he had been hearing voices for the past five days); AR 446-54 (In August 2015, plaintiff was only off his Depakote for a week, and a few days past due on his injection of Invega Sustenna (given every three weeks) before he started hearing voices and having suicidal ideation)).

In addition, plaintiff's 2015 hospitalization records contain evaluations that are probative of plaintiff's functioning during the relevant time period. When plaintiff was admitted to the hospital in May and August 2015, his Global Assessment of Functioning ("GAF") score was 30 on admission and 45 on discharge, and in June 2015, his GAF score was 35. (*See* AR 468, 446, 460, 472.) A GAF score is "relevant evidence" of a claimant's ability to function mentally. *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1255 (W.D. Wash. May 7, 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1023 n.8 (8th Cir. 2007));

*see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (treating the claimant's GAF score as relevant evidence); *Riedinger v. Berryhill*, 2017 WL 782753, at *3 (W.D. Wash. Feb. 1, 2017), report and recommendation adopted, 2017 WL 772136 (W.D. Wash. Feb. 28, 2017) ("A GAF score that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the record, including medical source opinions, 20 C.F.R. §§ 404.1545(a), 416.945(e).").

"A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Id.* (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IVTR") at 34)); *see also Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("A GAF of forty indicates some impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood."); *Cox v. Astrue*, 495 F.3d 614, 620 n. 5 (8th Cir. 2007) (GAF score in forties may be associated with serious impairment in occupational functioning).[2] Thus,

---

[2] *See also Parslow v. Colvin*, 2013 WL 6038955, at *7 (W.D. Wash. Nov. 13, 2013) (citing DSM–IVTR at 32-34) (a GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas"); *Kenner v. Colvin*, 2015 WL 736267, at *2 (C.D. Cal. Feb. 20, 2015) (citing DSM–IVTR at 34) ("A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).").

even after treatment at the hospital, plaintiff's GAF scores indicated serious symptoms and impairment.

The Court therefore rejects the Commissioner's characterization of Dr. Donnelly's 2015-2016 progress notes and plaintiff's 2015 hospitalization records as cumulative of other evidence the ALJ discussed. To the contrary, the Court finds that this evidence was significant and probative and that the ALJ erred in failing to discuss it.

The Commissioner argues that even if the ALJ erred, the error was harmless. (*See* ECF No. 15-1 at 13-17.) Harmless error analysis does apply in this context. *See, e.g., Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015); *Garrison*, 759 F.3d at 1012. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

Here, the Court is unable to conclude that the ALJ's error was harmless. In finding that plaintiff had the RFC to perform a full range of work at all exertional levels, with certain limitations, the ALJ relied on treatment records from 2011 and an evaluation from 2014, as well as the 2014 opinions of the State Agency medical consultants, to whose opinions he gave "great weight." (*See* AR 22-25.) The ALJ failed to consider evidence that the Court has found qualified as significant and probative. Moreover, as plaintiff points out, the 2014 opinions of the non-examining State Agency medical consultants likewise failed to take into consideration plaintiff's 2015 hospitalizations or the 2015-2016 progress notes of Dr. Donnelly. (*See* ECF No. 14-1 at 9.)

The Commissioner argues that the ALJ's RFC finding was still supported by substantial evidence. (*See* ECF No. 16-1 at 13-17.) However, given the complete failure of the ALJ to discuss any medical records from the two years prior to his decision, the Court cannot "confidently conclude" that the error was inconsequential to the ultimate nondisability determination. *See Marsh*, 792 F.3d at 1172-73 (finding that it could not "confidently conclude" there was harmless error when the ALJ failed to even mention a treating physician's opinion); *Stout*, 454 F.3d at 1055-56. This is particularly true because it appears that plaintiff's condition may have worsened over time, as evidenced by his

8

multiple hospitalizations in 2015.  *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (where the claimant's "condition [is] progressively deteriorating, the most recent medical report is the most probative"); *see also Magallanes v. Bowen*, 881 F.2d 747, 754-55 (9th Cir. 1989) ("Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports.").

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation."  A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id*.

IT IS SO ORDERED.

Dated:  June 25, 2018

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE